**UNITED STATES of America,**
**Plaintiff,**

v.

**Tomas GONZALEZ–RUIZ, Defendant.**

**No. CR 05 0046MHP.**

United States District Court,
N.D. California.

May 17, 2005.

Christine S. Watson, San Francisco, CA, for Plaintiff.

Josh Alan Cohen, San Francisco, CA, for Defendant.

*MEMORANDUM & ORDER*

**Re: Defendant's Motion to Dismiss**

PATEL, District Judge.

On January 25, 2005, a grand jury indicted defendant Tomas Gonzalez–Ruiz on a single count of illegal reentry into the United States after deportation in violation of 8 U.S.C. § 1326. Now before the court is defendant's motion to dismiss that indictment. Having considered the parties' arguments and for the reasons set forth below, the court enters the following memorandum and order.

*BACKGROUND*

The instant criminal action arises from a grand jury indictment charging defendant with a single count of illegal reentry into the United States by an alien who has been previously denied admission, excluded, deported, or removed from the United States. *See* 8 U.S.C. § 1326(a). In response to a motion filed by defendant, the government has also filed a bill of particulars alleging that defendant has been deported to Mexico on seven occasions during the period from January 1990 to June 2000. On March 28, 2005, defendant moved to dismiss the sole count charged in the indictment. That motion is now before the court.

*LEGAL STANDARD*

Under Rule 12(b) of the Federal Rules of Criminal Procedure, a party may file a motion to dismiss based on "any defense, objection, or request that the court can determine without a trial of the general issue." Fed.R.Crim.P. 12(b); *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). In considering a motion to dismiss, the court is limited to the face of the indictment and must accept the facts alleged in that indictment as true.

*Winslow v. United States*, 216 F.2d 912, 913 (9th Cir.), *cert. denied*, 349 U.S. 922, 75 S.Ct. 662, 99 L.Ed. 1254 (1955); *United States v. Ruiz–Castro*, 125 F.Supp.2d 411, 413 (D.Haw.2000). A court must decide such a motion before trial "unless it finds good cause to defer a ruling." Fed. R.Crim.P. 12(d); *Shortt Accountancy*, 785 F.2d at 1452 (citing former Fed.R.Crim.P. 12(e)).

## DISCUSSION

### I. *Failure to Allege Prior Aggravated Felony*

■ Defendant first argues that the charge against him must be dismissed because the indictment fails to allege that he has been previously convicted of an aggravated felony, a fact that would, if proven, increase the maximum sentence of imprisonment to which defendant would be exposed from two years to twenty years. *Compare* 8 U.S.C. § 1326(a) *with* 8 U.S.C. § 1326(b)(2). Defendant correctly notes that the indictment is devoid of any mention of such a prior aggravated felony conviction. Nonetheless, based on the charging sheet filed in this action, which indicates that defendant may be subject to a sentence of up to twenty years imprisonment, it can be inferred that the government plans to introduce evidence of such a conviction at sentencing. Citing the Supreme Court's recent decision in *Shepard v. United States*, —— U.S. ——, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), defendant asserts that the failure to allege the fact of that prior conviction in the indictment violates his Sixth Amendment right to have any fact that might increase his maximum sentence pleaded in the indictment, presented to a jury, and proved beyond a reasonable doubt.

As *Shepard's* recent vintage suggests, the question presented by defendant's motion touches upon a rapidly evolving area of constitutional law. Nonetheless, the court has little trouble concluding that defendant's argument remains unambiguously foreclosed by *Almendarez–Torres v. United · States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). In that case, the Supreme Court considered whether section · 1326(b)(2)'s "recidivism" requirement ·defines a separate crime, and thus must be pleaded in the indictment, or "simply authorizes an enhanced penalty." *Id.* at 226, 228, 118 S.Ct. 1219. The Court unequivocally held that section 1326(b)(2) falls in the· latter category, rejecting the defendant's argument that Congress was constitutionally required to treat the fact of recidivism as an element of the offense simply because it increased the maximum penalty to which the defendant was exposed. *Id.* at 238–39, 118 S.Ct. 1219. Thus, as the Court subsequently observed in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), *Almendarez–Torres* "stands for the proposition that not every fact expanding a penalty range must be stated in a felony indictment, the precise holding being that recidivism increasing the maximum penalty need not be so charged." *Id.* at 248, 118 S.Ct. 1219.

In *United States v. Pacheco–Zepeda*, 234 F.3d 411 (9th Cir.), *cert. denied*, 532 U.S. 966, 121 S.Ct. 1503, 149 L.Ed.2d 388 (2001), the Ninth Circuit reconsidered the holding of *Almendarez–Torres* in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). That landmark decision held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the proscribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. A corollary to this rule, at least in federal prosecutions, is that every fact (other than the fact of a prior conviction) that increases the maximum penalty to

which a felony defendant is exposed must be alleged in the indictment. *See Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215. Nonetheless, the Court expressly declined to overrule *Almendarez–Torres,* instead preserving that case as a "narrow exception to the general rule" that *Apprendi* announced. *See id.* at 488–90, 120 S.Ct. 2348. Thus, confronted with *Apprendi's* clearly expressed intent to preserve the holding of *Almendarez–Torres,* the *Pacheco–Zepeda* court held that *Almendarez–Torres'* interpretation of section 1326(b)(2) continued to bind the courts of this Circuit. *See* 234 F.3d at 414.

The Ninth Circuit subsequently reaffirmed *Pacheco–Zepeda's* holding following the Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *See United States v. Quintana–Quintana,* 383 F.3d 1052, 1053 (9th Cir.), *reh'g and reh'g en banc denied,* 383 F.3d 1052 (9th Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1100, 160 L.Ed.2d 1085 (2005). However, defendant now challenges the continued vitality of *Almendarez–Torres* based on yet another Supreme Court decision extending *Apprendi's* reach, arguing that the "mode of analysis" employed in the Supreme Court's recent *Shepard* decision is "clearly irreconcilable" with *Almendarez–Torres'* recidivism exception. Def.'s Mem. P. & A. at 4 (quoting *Miller v. Gammie,* 335 F.3d 889, 900 (9th Cir.2003) (en banc)). The *Shepard* case involved the application of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which imposes a fifteen-year mandatory minimum sentence on any person who, after having been previously convicted of a "violent felony" on three separate occasions, is found guilty of the offense of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). *See Shepard,* 125 S.Ct. at 1257. After the defendant in *Shepard* had pleaded guilty to the gun possession charge, the government introduced evidence of a prior burglary conviction under a Massachusetts statute for the purpose of enhancing his sentence under the ACCA. *Id.* The difficulty in applying the ACCA under such circumstances arose from the Supreme Court's decision in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), in which the Court held that only "generic burglary"—that is, an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime"—qualifies as a "violent felony" under the APA. 495 U.S. at 599, 602, 110 S.Ct. 2143. However, the Massachusetts burglary statute at issue in *Shepard* extended the definition of burglary to encompass the unlawful entry into a boat or car in addition to a structure. *See* 125 S.Ct. at 1257. The government nonetheless argued that the sentencing court could look beyond the facts alleged in the charging document or admitted by the defendant for the purpose of establishing that the circumstances of the defendant's prior conviction would have supported a conviction under a "generic burglary" statute and thus the imposition of an enhanced sentence under the ACCA. *Id.* at 1257. The Court rejected this argument, concluding that *Apprendi* prohibited such an inquiry where a finding that the defendant had committed "generic burglary" would have the effect of increasing his sentence beyond the statutory maximum proscribed for violations of section 922(g)(1). *Id.* at 1262–63.

Were this court writing on a blank slate, it would certainly be willing to entertain defendant's argument that *Almendarez–Torres* cannot be reconciled with *Shepard.* However, it is not; indeed, the *Shepard* Court took pains to distinguish *Almendarez–Torres,* observing that the disputed facts in the case before it were simply "too far removed from the conclusive significance of a prior judicial record" to fall within the exception for prior convictions carved out from the holding of *Apprendi.*

*Shepard,* 125 S.Ct. at 1262–63; *see also Shepard,* 125 S.Ct. at 1264 (Thomas, J., concurring) (noting that "this Court has not yet reconsidered *Almendarez–Torres*"). Thus, this court is compelled to recognize *Almendarez–Torres'* continued, albeit ever narrowing, precedential authority.

In short, defendant's Sixth Amendment claim comes before the court under the same circumstances that the Ninth Circuit confronted in *Pacheco–Zepeda,* where, as noted above, the court rejected an argument that *Apprendi* overruled *Almendarez–Torres. See Pacheco–Zepeda,* 234 F.3d at 414. In reaching this conclusion, the court observed:

> Because *Apprendi* preserves *Almendarez–Torres* as a 'narrow exception' to *Apprendi's* general rule, we can conclude, at most, that *Apprendi* casts doubt on the continuing viability of *Almendarez–Torres.* If the views of the Supreme Court's individual Justices and the composition of the Court remain the same, *Almendarez–Torres* may eventually be overruled. But such speculation does not permit us to ignore controlling Supreme Court authority. Unless and until *Almendarez–Torres* is overruled by the Supreme Court, we must follow it.

*Id.* (footnote and citation omitted). That reasoning applies with equal force here. Accordingly, the court, being bound by the holding of *Almendarez–Torres,* concludes that the fact of defendant's prior conviction for an aggravated felony is not an element of the offense of illegal reentry into the United States after deportation. Consequently, that fact need not be alleged in the indictment. The court therefore denies defendant's motion to dismiss on that ground.

## II. *Finding of Prior Deportability*

██ Defendant next contends that the indictment must be dismissed because it implicitly relies on an immigration judge's (or nonjudicial immigration officer's) finding that he was a deportable alien, thereby violating his Sixth Amendment right to trial by jury. Defendant correctly points out that such a finding of deportability may result in a "dramatic" increase in his sentence in that it allows him to be convicted for the offense of illegal reentry into the United States under 8 U.S.C. § 1326 rather than the offense of illegal entry in violation 8 U.S.C. § 1325(a). *See* Def.'s Mem. P. & A. at 6. While the latter carries a maximum sentence of imprisonment of only two years, a defendant having a prior aggravated felony conviction and found guilty under section 1326 may be imprisoned for up to twenty years. *See* 8 U.S.C. § 1326(b)(2). Thus, defendant argues that *Apprendi* requires the fact of his prior deportability to be alleged in the indictment.

Defendant is of course correct in observing that under *Apprendi,* the additional element of prior deportability that distinguishes the offense defined by section 1326 from that set forth in section 1325(a) must be alleged in the indictment. *See Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348; *Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215. Specifically, to convict defendant under section 1326, the government must prove, *inter alia,* that defendant "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding." 8 U.S.C. § 1326(a). There is no doubt that proof of one of these facts may "convert the misdemeanor of unlawful entry into the felony of unlawful entry after deportation," *United States v. Mendoza–Lopez,* 481 U.S. 828, 838–39, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), and thus may increase the maximum sentence to which defendant is exposed from two years to twenty years. However, it is also apparent that the instant indictment alleges that defendant has been "previously denied admission, excluded, deported, and

removed from the United States to Mexico." Indictment at 1. Thus, contrary to defendant's assertion, there is nothing to suggest that the government has failed to allege any fact necessary to support a conviction under section 1326.

 Defendant nonetheless maintains that *Apprendi* prohibits the government's reliance on the findings of an executive branch official to establish the fact of his deportability. The error in this argument lies in defendant's assumption that the government will bear the burden of proving at trial that defendant was unlawfully deported. This assumption is simply incorrect. To prove unlawful reentry in violation of section 1326, the government need only show that: (1) the defendant is an alien; (2) that he or she was deported and removed from the United States; and (3) that he or she voluntarily reentered and remained in the United States without the consent of the Attorney General. *United States v. Gondinez–Rabadan,* 289 F.3d 630, 633 (9th Cir.2002) (citing *United States v. Quintana–Torres,* 235 F.3d 1197, 1199–1200 (9th Cir.2000)), *cert. denied,* 537 U.S. 917, 123 S.Ct. 339, 154 L.Ed.2d 202 (2002). Lawfulness of the prior deportation is not an element of the offense defined by section 1326. *Mendoza–Lopez,* 481 U.S. at 834–35, 107 S.Ct. 2148; *United States v. Alvarado–Delgado,* 98 F.3d 492, 493 (9th Cir.1996) (en banc), *cert. denied,* 519 U.S. 1155, 117 S.Ct. 1096, 137 L.Ed.2d 228 (1997). Consequently, because the government is not required to establish that defendant's prior deportation was lawful in order for him to be found guilty of the offense of illegal reentry, it necessarily follows that the Sixth Amendment does not require the lawfulness of the prior deportation order at issue to be determined by a jury.

Defendant maintains that *United States v. Tighe,* 266 F.3d 1187 (9th Cir.2001), requires the court to hold otherwise. Like *Shepard, Tighe* involved the imposition of an enhanced sentence under the ACCA based on a prior violent felony conviction under circumstances where the effect of the enhancement was to increase the defendant's sentence beyond what otherwise would have been the statutory maximum penalty. *Id.* at 1190. The district court had held that a prior juvenile conviction could serve as a predicate felony for such an enhancement in spite of the fact that the defendant had no right to a jury trial in the juvenile court proceedings. *Id.* Relying on *Apprendi,* the Ninth Circuit reversed, holding that a fact found in a non-jury juvenile adjudication could not be used to increase the length of the defendant's sentence beyond what would been supported by the facts alleged in the charging document. *Id.* at 1195.

While defendant argues that *Tighe* is indistinguishable from the case at bar, he overlooks one fundamental difference between the two cases. In *Tighe,* the district court's constitutional error lay in its reliance on the fact of a juvenile conviction as conclusive proof that the offense giving rise to that conviction actually occurred. In contrast, here the government need only prove that defendant was found to be deportable in order to convict him of the offense of illegal reentry; it need not establish that the findings underlying that deportation order were factually correct. *See Mendoza–Lopez,* 481 U.S. at 834–35, 107 S.Ct. 2148 (1987); *Alvarado–Delgado,* 98 F.3d at 493.[1] Thus, because it is the fact of deportability rather than the validity of the deportation order that gives rise to the possibility that defendant will be sentenced to up to twenty years in prison,

---

1. However, it should be noted that section 1326(d) sets forth procedures by which a defendant can collaterally attack the validity of the deportation order that gives rise to a possible conviction for illegal reentry. 8 U.S.C. § 1326(d).

and because that fact is alleged in the indictment, defendant's reliance on *Tighe* is unavailing. The court therefore denies defendant's motion to dismiss on that basis.

### III. *Grand Jury Charging Instructions*

■ Finally, defendant moves to dismiss the indictment on the ground that the instructions given to the grand jury that returned a true bill against him violated the Fifth Amendment. Specifically, defendant objects to a passage of the grand jury instructions informing the jurors that they may neither consider "the wisdom of the criminal laws enacted by Congress" nor "the punishment provided by law for an offense charged in the indictment" in determining whether a particular individual should be indicted. Def.'s Exh. A at 11–12. According to defendant, such instructions, which are derived from the model charge recommended by the Administrative Office of the United States Courts, vitiate the "traditional unfettered discretion" of the grand jury to consider political and equitable considerations in deciding whether to return a true bill and are thus incompatible with the Grand Jury Clause of the Fifth Amendment. Def.'s Mem. P. & A. at 10.

The court finds this argument to be without merit. Virtually identical grand jury instructions have been approved by the Ninth Circuit on four separate occasions. *See United States v. Rivera–Sillas,* 376 F.3d 887, 893–94 (9th Cir.2004); *United States v. Navarro–Vargas,* 367 F.3d 896, 898 (9th Cir.), *reh'g in banc granted and vacated by* 382 F.3d 920 (9th Cir. 2004); *United States v. Adams,* 343 F.3d 1024, 1027 n. 1 (9th Cir.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 2871, 159 L.Ed.2d 779 (2004), *reh'g denied,* —— U.S. ——, 125 S.Ct. 18, 159 L.Ed.2d 849 (2004); *United States v. Marcucci,* 299 F.3d 1156, 1164 (9th Cir.2002) (per curiam), *cert. denied,* 538 U.S. 934, 123 S.Ct. 1600, 155

L.Ed.2d 334 (2003). Here too, defendant points out that the law in this area is somewhat unsettled, as is evidenced by the Ninth Circuit's decision to grant en banc review of the panel decision in *Navarro–Vargas.* Once again, however, this court remains bound by the precedent of a higher court unless or until the above-cited decisions are overruled by a Ninth Circuit en banc panel or by the Supreme Court. Such precedent makes clear that the Administrative Office's model charge (and hence the grand jury instructions challenged here) comports with the requirements of the Fifth Amendment.

The only authority that defendant cites that would hold to the contrary is Judge Kozinski's dissent from the withdrawn *Navarro–Vargas* panel opinion. In that opinion, Judge Kozinski argued that the *Navarro–Vargas* majority and the *Adams* panel opinion on which it relied erred in their interpretation of *Marcucci,* the first Ninth Circuit case to consider the constitutionality of the challenged instructions. *See Navarro–Vargas,* 367 F.3d at 900 (Kozinski, J., dissenting). The *Adams* court cited *Marcucci* for the proposition that the model charge "[does] not misstate the constitutional role and function of the grand jury," *Adams,* 343 F.3d at 1027 n. 1, a statement that the *Navarro–Vargas* majority characterized as reading *Marcucci* to hold that "the model charge did not impermissibly infringe upon the grand jury's independent exercise of its discretion." *Navarro–Vargas,* 367 F.3d at 898. Judge Koziniski took issue with this broad reading of *Marcucci,* asserting that "[a] court cannot declare a grand jury instruction constitutional en gross and immunize it from all future constitutional challenges." *Navarro–Vargas,* 367 F.3d at 900 (Kozinski, J., dissenting).

Thus, observing that "*Adams* cited *Marcucci* without explication or elucidation," Judge Kozinski concluded that the decision

of the *Adams* panel "can be read no more broadly than *Marcucci* itself." *Id.*

Whatever merit Judge Kozinski's argument might have in the abstract, it is unclear how it can possibly be relevant to the adjudication of the motion that is now before this court. It cannot be seriously disputed that the *Marcucci* court considered the challenged passage of the model charge in its entirety and approved it without qualification, *see* 299 F.3d at 1159, 1164–65, and whatever lingering doubt that may have remained regarding the scope of *Marcucci's* holding was conclusively resolved by *Adams*. Thus, because those Ninth Circuit decisions carry the weight of binding precedent, this court must follow *Marcucci* and *Adams* and uphold the validity of the jury instructions challenged here. The court therefore denies defendant's motion to dismiss on this final ground.

*CONCLUSION*

For the reasons set forth above, the court DENIES defendant's motion to dismiss.

IT IS SO ORDERED.