# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

JOSE LUIS RIVERA-SILLAS,
        *Defendant-Appellant.*

No. 03-50244

D.C. No.
CR-02-01910-IEG

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
REHEARING AND
REHEARING EN
BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, District Judge, Presiding

Argued and Submitted
June 9, 2004—Pasadena, California

Filed July 15, 2004
Amended July 29, 2005

Before: Thomas G. Nelson, A. Wallace Tashima, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Thomas G. Nelson

8671

## COUNSEL

Steven Barth, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Carol C. Lam, United States Attorney, Joseph H. Huynh, Assistant United States Attorney, United States Attorney's Office, San Diego, California, for the plaintiff-appellee.

## ORDER

Our opinion filed on July 15, 2004, and published at 376 F.3d 887, is AMENDED as follows:

We withdraw the content of the paragraph on page 893 beginning with "Rivera-Sillas contends that if the Government need not prove that a defendant has knowledge of his presence in the United States, . . ." and substitute the following paragraph in its place:

Rivera-Sillas contends that if the Government need

not prove that a defendant has knowledge of his presence in the United States, a person may be criminally convicted for inadvertently wandering into this country. We addressed this potential problem in dicta in *United States v. Quintana-Torres*.[28] In that case, we concluded that there are multiple possibilities of unknowing and/or involuntary entry into the United States.[29] Because involuntary presence in the United States is the rare exception and not the rule, however, we allow an inference of voluntariness where the defendant has raised no evidence to the contrary.[30] Rivera-Sillas's argument therefore bears no weight.

The order, filed September 3, 2004, staying the decision of Appellant's petition for rehearing and petition for rehearing en banc is lifted.

The panel now votes to deny the petition for panel rehearing. Judge Fisher votes to deny the petition for rehearing en banc and Judges T.G. Nelson and Tashima so recommend. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on en banc rehearing. *See* Fed. R. App. P. 35(f). The petition for panel rehearing and the petition for rehearing en banc are DENIED.

No further petitions for panel rehearing or for rehearing en banc shall be entertained.

---

[28] 235 F.3d at 1200.

[29] *Id.*

[30] *See id.*; *see also United States v. Castellanos-Garcia*, 270 F.3d 773, 776 (9th Cir. 2001) (citing *Quintana-Torres*, 235 F.3d at 1200).

## OPINION

T.G. NELSON, Circuit Judge:

Jose Luis Rivera-Sillas appeals the district court's denial of his motions to dismiss his underlying indictment. We hold that the district court correctly denied Rivera-Sillas's motions, and we affirm.

## I.   FACTS AND PROCEDURAL HISTORY

Appellant Jose Luis Rivera-Sillas is a citizen of Mexico. On June 23, 2002, a border patrol agent apprehended Rivera-Sillas and several other people in the United States near the Tecate Port of Entry. The border patrol agent identified himself to the group, and Rivera-Sillas and his companions admitted that they were citizens of Mexico and did not have legal documentation to be in the United States. The agent took Rivera-Sillas to the border patrol center for processing. There, the IDENT and AFIS fingerprint systems identified Rivera-Sillas as having been removed from the United States to Mexico six times, the last time on November 30, 2000, via Nogales, Mexico.

The border patrol agent read Rivera-Sillas his *Miranda* rights, and Rivera-Sillas agreed to speak to the agent without an attorney present. Rivera-Sillas then repeated that he was a citizen of Mexico and that he was in the United States without permission. When Rivera-Sillas realized that authorities were taking him into custody instead of deporting him to Mexico, he became confrontational and claimed that the border patrol field officers had beaten him. Authorities took Rivera-Sillas to an emergency room, where doctors examined and released him.[1] He was then held in custody.

---

[1]A review board of the Office of the Inspector General found that the agents did nothing wrong.

On July 23, 2002, a grand jury indicted Rivera-Sillas and charged him with being

> an alien, who previously had been excluded, deported and removed from the United States to Mexico, was found in the United States, without the Attorney General of the United States having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8, United States Code, Section 1326.

Rivera-Sillas moved to dismiss the indictment on several grounds. The district court denied his motion on August 26, 2002. On February 28, 2003, Rivera-Sillas pleaded guilty under a conditional plea agreement. He retained the right to appeal to this court the following issues:

> [T]he trial court's pre-trial denials on August 26, 2002 of Defendant's: (1) motion to dismiss the indictment for failure to allege "voluntary entry"; (2) motion to dismiss the indictment for failure to allege inspection and admission by an immigration officer or actual and intentional evasion of inspection; (3) motion to dismiss the indictment for failure to allege the mens rea element of the charged offense; (4) motion to dismiss the indictment due to improper grand jury instructions; and (5) motion to dismiss the indictment for failure to appoint Defendant counsel at his deportation proceedings.

Rivera-Sillas now appeals, and we consider, the reserved issues.

## II.   JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the district court's denial of the motion to dismiss the indictment *de novo*.[2]

### III.   LACK OF COUNSEL AT DEPORTATION HEARING

Rivera-Sillas first argues that the district court should have dismissed the indictment because the use of his uncounseled 2000 deportation as basis for his sentence violated his Sixth Amendment rights. His argument fails, and we affirm the district court's refusal to dismiss the indictment on this ground.

Rivera-Sillas argues that *Alabama v. Shelton*[3] dictates that the district court may not sentence him to imprisonment based on his underlying, uncounseled deportation. Shelton was convicted in Alabama, without the aid of counsel, of misdemeanor assault. The trial court sentenced him to a thirty-day jail term, but immediately suspended the sentence. The Alabama Court of Criminal Appeals affirmed. The Alabama Supreme Court affirmed Shelton's conviction, but invalidated the jail term, holding that a defendant may not be "sentenced to a term of imprisonment absent provision of counsel."[4] The United States Supreme Court agreed, stating that "Shelton is entitled to appointed counsel at the critical stage when his guilt or innocence of the charged crime is decided and his vulnerability to imprisonment is determined. . . ."[5]

[1] Rivera-Sillas argues that his situation mirrors Shelton's, as he lacked counsel during the hearing underlying his 2000 deportation, and that deportation is now being used as a basis for imprisonment. This argument is without merit. The Alabama and United States Supreme Courts invalidated Shelton's sentence because he was entitled to counsel at his underlying

---

[2]*United States v. Navarro-Vargas*, 367 F.3d 896, 898 (9th Cir. 2004).

[3]535 U.S. 654 (2002).

[4]*Id*. at 659 (internal quotation marks omitted).

[5]*Id*. at 674.

criminal proceeding. In contrast, the law does not entitle aliens to counsel at deportation hearings. A deportation proceeding is administrative in nature and is not accompanied by a right to counsel.[6] That the resultant deportation might be used against him in a later, unrelated criminal prosecution does not create a right to counsel. Thus, the fact that Rivera-Sillas had no counsel at his underlying deportation hearing creates no constitutional problem. We affirm Rivera-Sillas's § 1326 conviction and sentence for being found in the United States after being deported.

Moreover, Rivera-Sillas is not now in prison for the underlying deportation. He is in prison because the court found him guilty of the crime of being found in the United States *after* having been deported. A defendant need not have had counsel at his underlying deportation hearing in order to be convicted and sentenced under 8 U.S.C. § 1326. Accordingly, we affirm the district court.

## IV.   VOLUNTARY ENTRY

Rivera-Sillas next argues that voluntary entry is an essential element of a § 1326 offense. According to Rivera-Sillas, the Government's failure to charge that his entry was voluntary was a failure to state an offense under the statute. Thus, he contends that the district court should have dismissed the indictment because it did not specifically state that he voluntarily entered the United States. Rivera-Sillas's argument fails. The grand jury indicted Rivera-Sillas under the "found in" clause of § 1326.[7] That clause does not require the indictment to specifically state that the defendant alien voluntarily entered the United States. We affirm the district court's refusal to dismiss the indictment on this ground.

---

[6] *See United States v. Lara-Aceves*, 183 F.3d 1007, 1012 (9th Cir. 1999), *overruled on other grounds by United States v. Rivera-Sanchez*, 247 F.3d 905 (9th Cir. 2001) (en banc).

[7] *See* 8 U.S.C. § 1326(a)(2).

**[2]** We recognized in *United States v. Pacheco-Medina*[8] that § 1326 delineates three distinct offenses for a deported alien: to "enter," to "attempt to enter," and to be "found in" the United States without permission.[9] To "enter" and to be "found in" are two separate offenses. Therefore, the Government's failure to charge one did not render the charging of the other incomplete. "[W]e have never suggested that the crime of 'entry' must be charged in order to charge the crime of being 'found in.' "[10] The Government does not need to charge or prove voluntary entry in a § 1326 "found in" offense; indeed we have definitively said that "[v]oluntary entry need not be expressly pled in an indictment for a violation of 8 U.S.C. § 1326."[11] As we stated in *United States v. Parga-Rosas*, "[a]lleging that the defendant is a deported alien subsequently found in the United States without permission suffices"[12] for a § 1326 "found in" indictment.

*United States v. Buckland*[13] did not alter the state of § 1326 jurisprudence. In *Buckland*, we considered penalty provisions of a federal drug statute. Because the drug quantity the defendant possessed affected the defendant's period of imprisonment, we found drug quantity a material fact which the Government had to charge and prove.[14] In contrast, voluntary entry in a "found in" offense has no effect on a defendant's sentence. It is thus not a material fact under *Buckland* and it need not be charged. As we recently stated in *United States v. Rodriguez-Rodriguez*,[15] "[b]ecause it is not necessary to prove or allege voluntary or unlawful entry in a 'found in'

---

[8] 212 F.3d 1162 (9th Cir. 2000).

[9] *Id.* at 1165.

[10] *United States v. Parga-Rosas*, 238 F.3d 1209, 1213 (9th Cir. 2001).

[11] *United States v. San Juan-Cruz*, 314 F.3d 384, 390 (9th Cir. 2002).

[12] *Parga-Rosas*, 238 F.3d at 1213.

[13] 289 F.3d 558 (9th Cir. 2002) (en banc).

[14] *Id.* at 568.

[15] 364 F.3d 1142 (9th Cir. 2004).

conviction, and because voluntary entry makes no difference in a defendant's exposure to penalties, *Buckland* in no way overrules *Parga-Rosas*."**[16]**

**[3]** Rivera-Sillas's indictment properly charged him with being a previously deported alien who was found in the United States without the permission of the Attorney General. Because the indictment charged a "found in" offense, it did not have to charge voluntary entry. We therefore affirm the district court.

## V.   PROOF OF INSPECTION AND ADMISSION

Rivera-Sillas contends that the district court should have dismissed the indictment for failure to charge (a) inspection and admission by an immigration officer or (b) actual and intentional evasion of inspection at the inspection point nearest to where he was apprehended. Rivera-Sillas's argument lacks merit. We affirm the district court.

**[4]** Rivera-Sillas argues that this court's holding in *Pacheco-Medina*[17] mandates that the Government charge all elements of the definition of "entry" developed by the Board of Immigration Appeals in *Matter of Pierre*.[18] *Matter of* Pierre defined "entry" as involving:

> (1) a crossing into the territorial limits of the United States, i.e. physical presence; plus (2) inspection and admission by an immigration officer; or (3) actual and intentional evasion of inspection at the nearest inspection point; coupled with (4) freedom from restraint.[19]

---

[16]*Id*. at 1146.

[17]212 F.3d at 1164.

[18]*Matter of Pierre*, 14 I. & N. Dec. 467, 468 (B.I.A. 1973).

[19]*Id*. (internal citations omitted).

*Pacheco-Medina*, however, did not require the Government to charge all the elements of entry. It held that an illegal entrant to the United States must be free from official restraint in order for the court to find that the alien illegally entered this country.[20] Thus, it merely addressed the fourth element.

[5] As discussed above, *Pacheco-Medina* stated that § 1326 delineates three distinct offenses for a deported alien: to "enter," to "attempt to enter," and to be "found in" the United States without permission.[21] *Parga-Rosas* recognized these three distinct offenses and stated:

> [W]e have never suggested that the crime of "entry" must be charged in order to charge the crime of being "found in." Nor did we mean to prescribe a new rule for pleading when we said in *Pacheco-Medina* that "an entry, as defined legally, is required before a person is 'found in' the United States."[22]

Thus, *Parga-Rosas* clarified the very language from *Pacheco-Medina* on which Rivera-Sillas relies. The Government need not plead and prove entry in order to charge or convict an alien with a § 1326 "found in" crime. The district court was correct in denying dismissal of the indictment on this ground, and we affirm.

## VI.  MENS REA

Rivera-Sillas next argues that the district court should have dismissed the indictment because it did not charge a mens rea element: general intent. He contends that the indictment had to charge him with knowing that he was in the United States. Rivera-Sillas's argument fails, and we affirm the district court.

---

[20]*See Pacheco-Medina*, 212 F.3d at 1163-64.

[21]*Id*. at 1165.

[22]*Parga-Rosas*, 238 F.3d at 1213 (citation omitted).

**[6]** Section 1326 does not specify mens rea. This does not mean, however, that § 1326 violation is a status or strict liability offense; it is not.[23] A "found in" offense under § 1326 is a general intent crime.[24] General intent crimes concern, in the words of the Fifth Circuit, "willful and knowing *acts*."[25] We are comfortable presuming that a defendant who is found in the United States willfully and knowingly *acted* in order to enter this country.[26] Therefore, " '[a]lleging that the defendant is a deported alien subsequently found in the United States without permission suffices [to allege general intent].' "[27]

**[7]** Rivera-Sillas contends that if the Government need not prove that a defendant has knowledge of his presence in the United States, a person may be criminally convicted for inadvertently wandering into this country. We addressed this potential problem in dicta in *United States v. Quintana-Torres*.[28] In that case, we concluded that there are multiple possibilities of unknowing and/or involuntary entry into the United States.[29]

---

[23]*See United States v. Pina-Jaime*, 332 F.3d 609, 613 (9th Cir. 2003) (requiring the Government to prove an unlawful act in order to convict an alien of being found in the United States); *United States v. Ayala*, 35 F.3d 423, 425-26 (9th Cir. 1994) (holding that a § 1326 violation is not a status crime).

[24]*See Pina-Jaime*, 332 F.3d at 613 (citing *Pena-Cabanillas v. United States*, 394 F.2d 785, 790 (9th Cir. 1968) (requiring general intent)). In contrast, an "attempt to enter" offense under § 1326 is a specific intent crime. *See United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1195-96 (9th Cir. 2000) (en banc). Thus, the Government must charge mens rea in § 1326 "attempt to enter" indictments.

[25]*United States v. Berrios-Centeno*, 250 F.3d 294, 299 (5th Cir. 2001).

[26]*See United States v. Quintana-Torres*, 235 F.3d 1197, 1200 (9th Cir. 2000) (stating that absent proof otherwise, a juror may infer the defendant intended to be in the United States if the defendant is found within this country).

[27]*Berrios-Centeno*, 250 F.3d at 299 (quoting *Parga-Rosas*, 238 F.3d at 1213) (alterations in original).

[28]235 F.3d at 1200.

[29]*Id.*

Because involuntary presence in the United States is the rare exception and not the rule, however, we allow an inference of voluntariness where the defendant has raised no evidence to the contrary.[30] Rivera-Sillas's argument therefore bears no weight.

**[8]** We hold, consistent with this court's prior rulings and that of the Fifth Circuit, that general intent of the defendant to reenter the United States may be inferred from the fact that the defendant was previously deported and was subsequently found in the United States. Thus, because Rivera-Sillas's indictment did allege "that he was deported, removed, and subsequently present without consent of the Attorney General," it "fairly conveyed that [his] presence was a voluntary act."[31] We therefore affirm the district court.

## VII.   GRAND JURY INSTRUCTIONS

Rivera-Sillas argues that the district court's charge to the grand jury improperly circumscribed the subject matter of the grand jury's inquiries and deliberations, and that the charge therefore runs contrary to the history of the grand jury institution. His argument fails.

**[9]** The district court's instructions to the grand jury followed the model charge recommended by the Administrative Office of the United States Courts. The specific portion of the instruction at issue stated:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you. Furthermore, when

---

[30]*See id.*; *see also United States v. Castellanos-Garcia*, 270 F.3d 773, 776 (9th Cir. 2001) (citing *Quintana-Torres*, 235 F.3d at 1200).

[31]*Berrios-Centeno*, 250 F.3d at 299-300.

deciding whether or not to indict, you should not be concerned about punishment in the event of conviction. Judges alone determine punishment.

This court has expressly approved identical grand jury instructions three times in three separate cases.[32]

In *United States v. Marcucci*, we examined the same issue that Rivera-Sillas now raises, "that the charge did not tell the grand jury that it could refuse to indict [ ] even if there was probable cause to support an indictment."[33] We held that the charge was "consistent with the historical function of the grand jury—protecting citizens from unfounded accusations not supported by probable cause."[34] We concluded that the charge was constitutional and without error.[35]

In *United States v. Adams,* we followed *Marcucci* and held that the challenged instruction does "not misstate the constitutional role and function of the grand jury."[36] Most recently, in *United States v. Navarro-Vargas* we reviewed the questioned grand jury charge in light of *Marcucci* and *Adams*. We found that "[t]he *Adams* court read *Marcucci* broadly as holding that the model charge did not impermissibly infringe on the grand jury's independent exercise of its discretion [and that e]ven if we might be disposed to adopt a narrower interpretation of *Marcucci*, we are not now free to do so in light of *Adams*."[37] We then held the grand jury charge constitutional and refused to dismiss the indictment on the basis of the grand jury charge.[38]

---

[32]*See United States v. Navarro-Vargas*, 367 F.3d 896, 898 (9th Cir. 2004); *United States v. Adams*, 343 F.3d 1024, 1027 n.1 (9th Cir. 2003), *United States v. Marcucci,* 299 F.3d 1156, 1164 (9th Cir. 2002) (per curiam).

[33]*Marcucci*, 299 F.3d at 1159.

[34]*Id*. at 1164.

[35]*Id*.

[36]343 F.3d at 1027, n.1.

[37]*Navarro-Vargas*, 367 F.3d at 898.

[38]*Id*.

Clear precedent controls this issue, and we therefore affirm the district court.

## VIII.   CONCLUSION

**[10]** The district court did not err when it denied Rivera-Sillas's motion to dismiss the indictment. The decision of the district court is therefore

**AFFIRMED**.