# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
               *Plaintiff-Appellee,*

v.

ISIDRO MORENO-HERNANDEZ,
               *Defendant-Appellant.*

No. 03-30387

D.C. No.
CR-03-30012-AA

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted
September 15, 2004—Portland, Oregon

Submission Withdrawn September 28, 2004
Resubmitted February 18, 2005

Filed February 18, 2005
Amended July 5, 2005

Before: J. Clifford Wallace, Ronald M. Gould, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

**COUNSEL**

Robert M. Stone, Medford, Oregon, for the defendant-appellant.

Karin J. Immergut, United States Attorney, District of Oregon, and Robert G. Thomson (argued), Assistant United States Attorney, Medford, Oregon, for the plaintiff-appellee.

---

## ORDER

The opinion filed February 18, 2005, slip op. 1973, and appearing at 397 F.3d 1248 (9th Cir. 2005), is amended as follows:

1) The sentence beginning "As Moreno-Hernandez challenges the applicability of a federal sentencing enhancement . . . ." (397 F.3d at 1250; slip op. at 1978) is deleted. In its place, insert the following sentence: "As Moreno-Hernandez challenges the applicability of a federal sentencing enhancement, however, we grant a limited remand pursuant to *United States v. Ameline*, No. 02-30326, 2005 WL 1291977 (9th Cir. June 1, 2005) (en banc)."

2) The two paragraphs beginning "Unlike Moreno-Hernandez's enhancement argument . . . ." and "Given these considerations . . . ." (397 F.3d at 1255-56; slip op. at 1987-88) are deleted. In their place, insert the following paragraphs:

   Whether or not Moreno-Hernandez's argument would otherwise have merit in light of *United States v. Rios-Beltran*, 361 F.3d 1204, 1209 n.4 (9th Cir. 2004), we are unpersuaded that *Blakely* could have altered the maximum possible sentence *at the time* of his 1999 Oregon state conviction. For purposes of ascertaining whether a predicate offense constitutes a "felony" for federal sentencing

purposes, we are concerned only with the maximum possible sentence at *that* time.

In *Rios-Beltran* — which was decided before *Blakely* — we held that "what matters for federal sentencing purposes is that the statutory maximum sentence for the offense for which [the defendant] was convicted exceeded one year." *Id.* at 1209. Because the statutory maximum for Rios-Beltran's prior conviction was greater than one year, and because "Oregon [had] not ruled out the possibility" that Rios-Beltran's actual sentence could lawfully exceed one year, we did not decide what effect it would have for purposes of section 2L1.2 if Oregon had ruled out that possibility. *Id.* at 1209 n.4. Likewise, at the time of Moreno-Hernandez's prior conviction, the statutory maximum for his offense was greater than one year, and Oregon law did not necessarily preclude the imposition of an actual sentence of more than one year.

Oregon law has changed in light of *Blakely*, so that any sentence in excess of the presumptive range in the state guidelines is now recognized as unconstitutional unless based on facts found by a jury or a prior conviction. *State v. Dilts*, 103 P.3d 95 (Or. 2004). That ruling was not in effect, however, at the time of Moreno-Hernandez's Oregon conviction.

Moreno-Hernandez's argument thus is tantamount to a collateral attack on his original conviction. We cannot consider such an attack as part of his challenge to a subsequent

sentencing enhancement. *See, e.g.*, *United States v. Marks*, 379 F.3d 1114, 1119 & n.4 (9th Cir. 2004) (citing *Custis v. United States*, 511 U.S. 485, 496 (1994)), *cert. denied*, 125 S. Ct. 1355 (2005); *United States v. Martinez-Martinez*, 295 F.3d 1041, 1044-45 (9th Cir. 2002). We therefore reject Moreno-Hernandez's *Blakely*-based challenge to the district court's determination that his Oregon state conviction was a "felony." We express no opinion on how section 2L1.2 would apply in a case where the statutory maximum for a prior conviction was greater than one year, but the maximum actual sentence that could lawfully be imposed *at the time of the conviction* was less than one year.

3) The title of the final section (397 F.3d at 1256, slip op. at 1988) is deleted. In its place, insert the following: "***Conclusion; Impact of* Ameline**"

4) The final paragraph (397 F.3d at 1256, slip op. at 1989) (including the disposition) is deleted. In its place, insert the following paragraphs:

We must, however, consider what effect the recent decision in *United States v. Ameline*, No. 02-30326, 2005 WL 1291977 (9th Cir. June 1, 2005) (en banc) has on this appeal. There, our en banc court held that "when we are faced with an unpreserved *Booker* error that may have affected a defendant's substantial rights, and the record is insufficiently clear to conduct a complete plain error analysis, a limited remand to the district court is appropriate for the purpose of ascertaining whether the sentence imposed

would have been materially different had the district court known that the sentencing guidelines were advisory." *Id.* at *1. However, in *Ameline*, the defendant had asserted the Sixth Amendment objection that his "sentence was enhanced by judge-found facts under a mandatory Guidelines system," and neither party had raised the "nonconstitutional error that a sentence was erroneously imposed under guidelines believed to be mandatory." *Id.* at *11 & n.8. Here, by contrast, the district court committed no Sixth Amendment error. *See supra* note 8. Thus, the question we must decide is whether to follow *Ameline*'s "limited remand" approach where the only error involved is of the nonconstitutional variety.

We conclude that a limited remand is proper in *all* pending direct criminal appeals involving unpreserved *Booker* error, whether constitutional or nonconstitutional. Nothing in the *Ameline* opinion indicates that the en banc court intended to utilize that approach only in cases of Sixth Amendment error. Nor do we perceive any reason why *Ameline* should be so limited. After all, the reason for a limited remand is that it sometimes is not possible for us to answer the question whether the district court would have imposed the same sentence if it had known the guidelines were advisory, and the fact that the district court has not conducted any fact-finding does not make this question any easier (or harder) for us to answer. We will therefore remand Moreno-Hernandez's sen-

tence in accordance with *Ameline*.

## REMANDED.

With these amendments, the panel has voted to deny the petition for panel rehearing. Judge Gould and Judge Berzon have voted to deny the petition for rehearing en banc, and Judge Wallace so recommends. The full court has been advised of the petition for rehearing en banc. No judge has requested a vote on whether to rehear the matter en banc. *See* FED. R. APP. P. 35. The petition for rehearing en banc is DENIED. No further petitions for rehearing or petitions for rehearing en banc shall be entertained.

---

## OPINION

BERZON, Circuit Judge:

Once more, we are asked to determine whether a federal defendant's previous state-law conviction is for a "felony that is . . . a crime of violence" under section 2L1.2(b)(1)(A)(ii) of the U.S. Sentencing Guidelines ("Guidelines"). *See, e.g.*, *United States v. Lopez-Patino*, 391 F.3d 1034, 1036-38 (9th Cir. 2004) (per curiam); *United States v. Contreras-Salas*, 387 F.3d 1095, 1097 (9th Cir. 2004); *United States v. Hernandez-Hernandez*, 387 F.3d 799, 804-06 (9th Cir. 2004); *United States v. Grajeda-Ramirez*, 348 F.3d 1123, 1124-25 (9th Cir. 2003), *cert. denied*, 125 S. Ct. 863 (2005).

Under Oregon law, assault in the fourth degree ("Assault IV"), normally a "Class A misdemeanor" punishable by no more than one year in prison, is a "Class C felony" punishable by up to five years in prison when committed, inter alia, in the presence of the victim's minor child. *See* OR. REV. STAT. § 163.160(3)(c).[1] At issue in this appeal is whether the pres-

---

[1]In full, section 163.160 provides:

> (1) A person commits the crime of assault in the fourth degree

ence of the victim's minor child should be considered in ascertaining whether the Oregon statute defines a "felony" for purposes of the Guidelines.

Sentencing factors based on some aspect of the defendant's legal history, such as recidivist sentencing enhancements, are not considered in determining whether a state-law offense is a felony. *See, e.g.*, *United States v. Pimentel-Flores*, 339 F.3d 959, 967-69 (9th Cir. 2003); *United States v. Corona-Sanchez*, 291 F.3d 1201, 1208-11 (9th Cir. 2002) (en banc). Today, however, we decline to extend these precedents to cases such as this one, where the sentencing factor is based on circumstances of the crime itself. Substantive offense-based enhancements are inseparable from the underlying offense

---

if the person:

    (a)   Intentionally, knowingly or recklessly causes physical injury to another; or

    (b)   With criminal negligence causes physical injury to another by means of a deadly weapon.

(2) Assault in the fourth degree is a Class A misdemeanor.

(3) Notwithstanding subsection (2) of this section, assault in the fourth degree is a Class C felony if the person commits the crime of assault in the fourth degree and:

    (a)   The person has previously been convicted of assaulting the same victim;

    (b)   The person has previously been convicted at least three times under this section or under equivalent laws of another jurisdiction and all of the assaults involved domestic violence, as defined in ORS 135.230; or

    (c)   The assault is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim.

(4) For the purposes of subsection (3) of this section, an assault is witnessed if the assault is seen or directly perceived in any other manner by the child.

and must be considered in determining the maximum available sentence.

We therefore agree with the district court that Defendant-Appellant Isidro Moreno-Hernandez's underlying Oregon conviction was, as far as this consideration goes, for a "felony." As Moreno-Hernandez challenges the applicability of a federal sentencing enhancement, however, we grant a limited remand pursuant to *United States v. Ameline*, No. 02-30326, 2005 WL 1291977 (9th Cir. June 1, 2005) (en banc).

## I.  Background

This appeal comes to us from Moreno-Hernandez's third conviction for illegally reentering the United States after removal. *See* 8 U.S.C. § 1326. All three federal convictions occurred subsequent to a 1999 Oregon state conviction for assault in the fourth degree, for "unlawfully and intentionally caus[ing] physical injury" to Yolanda Robinson in the presence of her minor child, Deanndra Wright. For that offense, Moreno-Hernandez was sentenced to sixty days in jail and three years on probation.

After pleading guilty to this most recent § 1326 charge, Moreno-Hernandez was sentenced to a term of seventy-seven months. Under the then-recently amended Guidelines,[2] the district court enhanced Moreno-Hernandez's sentence by sixteen levels, because he was deported, or unlawfully remained in the United States, after a conviction for a "felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2003).[3] From this sentence Moreno-Hernandez timely appeals.

---

[2]Moreno-Hernandez was not subject to the sixteen-level enhancement on his first two convictions. The Guidelines, at those times, allowed the sixteen-level enhancement only when the underlying offense was an "aggravated felony." *See* U.S.S.G. § 2L1.2(b)(1)(A) (2001).

[3]Under U.S.S.G. § 2L1.2(b)(1)(A), the sixteen-level enhancement also applies to a conviction for a felony that is "(i) a drug trafficking offense for which the sentence imposed exceeded 13 months; . . . (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense."

## II. "Felony"

The crux of Moreno-Hernandez's argument is that we should not consider the factor that made his offense punishable by as much as a five-year sentence — the presence of the victim's minor child — in ascertaining whether his underlying Oregon conviction was for a "felony."**[4]**

**[1]** Federal law and the Guidelines both define a felony as "any federal, state, or local offense punishable by imprisonment for a term exceeding one year." U.S.S.G. § 2L1.2, cmt. n.2; *see also* 18 U.S.C. § 3559(a). This bright-line distinction between felonies and misdemeanors, which dates back, at least in some form, to 1865, *see United States v. Graham*, 169 F.3d 787, 792 (3d Cir. 1999), has been repeatedly embraced as the law of our circuit, *see, e.g.*, *United States v. Robles-Rodriguez*, 281 F.3d 900, 904, 906 (9th Cir. 2002); *United States v. Olvera-Cervantes*, 960 F.2d 101, 103-04 (9th Cir. 1992); *United States v. Houston*, 547 F.2d 104, 106 (9th Cir. 1976).

**[2]** Assault IV without the presence of the victim's minor child carries a maximum sentence of one year in prison. *See* OR. REV. STAT. § 161.615. Because of the presence of the victim's minor child during the assault, Moreno-Hernandez's offense carried a maximum sentence of five years. *See id.* §§ 161.605; 163.160(3)(c). Moreno-Hernandez's underlying conviction is therefore a "felony" only if the minor child enhancement is pertinent in determining whether his conviction was for a "felony." The question before us is whether it should be so considered.

---

**[4]**Moreno-Hernandez challenges only whether his Assault IV conviction is a "felony." He has not challenged whether it is a "crime of violence." We therefore do not consider whether under the Supreme Court's recent decision in *Leocal v. Ashcroft*, 125 S. Ct. 377 (2004), affirming the reasoning of our earlier opinion in *United States v. Trinidad Aquino*, 259 F.3d 1140 (9th Cir. 2001), the mens rea required for an Assault IV conviction under Oregon law meets the requisites for a "crime of violence."

### A. *Corona-Sanchez*

In *Corona-Sanchez*, we considered whether the California state-law crime of petty theft committed by a previous offender was an aggravated felony under the Guidelines. The answer to that question turned on whether the crime was a "theft offense" punishable by a sentence of one year or more in prison. 291 F.3d at 1203-11. Under the California law at issue in *Corona-Sanchez*, the fact that the defendant was a repeat offender rendered him subject to a sentence — two years — that would have made his crime an aggravated felony, even though the underlying offense, petty theft, carried only a six-month statutory maximum.

**[3]** *Corona-Sanchez* applied the categorical approach outlined in *Taylor v. United States*, 495 U.S. 575 (1990), in combination with the distinction between substantive offenses and recidivist sentencing enhancements highlighted in *Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998). Applying these concepts to the question whether Corona-Sanchez's crime constituted an "aggravated felony," we concluded that, in assessing whether a crime is a "theft offense" punishable by one year or more in prison, the substantive offense is to be considered independently of any recidivist sentencing enhancement. Based on that analysis, *Corona-Sanchez* concluded that the crime of petty theft is not a "theft offense," and therefore is not an aggravated felony for purposes of the Guidelines, even though the maximum sentence to which Corona-Sanchez was subject was more than one year. 291 F.3d at 1210-11.

*Corona-Sanchez* explained the cleaving of the recidivist enhancement from the underlying offense largely on the basis that the enhancement was measured by *recidivism*. Following the Supreme Court's reiteration in *Apprendi v. New Jersey* that "recidivism does not relate to the commission of the offense," 530 U.S. 466, 496 (2000) (citation and internal quotation marks omitted), the en banc court regarded petty theft

as a single, substantive offense, as to which various sentencing alternatives were available depending on the defendant's past criminal history. *See, e.g.*, *Corona-Sanchez*, 291 F.3d at 1209 ("This approach is consistent with the Supreme Court's historic separation of recidivism and substantive crimes."). Importantly, under this approach, nothing substantive about the *offense* determined whether the petty theft was or was not an aggravated felony. The court rejected only the argument that a characteristic of the offender's *prior history* could be the reason a state crime becomes, for federal purposes, an "aggravated felony."

Here, by contrast, the enhancement in the Oregon Assault IV statute for the presence of the victim's minor child is not related to recidivism or any other past actions of the offender. Instead, it is the facts of the offense, not the legal history of the offender, that gives rise to the maximum available sentence of more than one year.

By way of example, we note that the other variants of Assault IV under Oregon law, in contrast, *do* mirror the enhancements at issue in *Corona-Sanchez*. Moreno-Hernandez was convicted of assault in the presence of the victim's minor child, *see* OR. REV. STAT. § 163.160(3)(c), but Assault IV is also a Class C felony if "(a) The person has previously been convicted of assaulting the same victim; [or] (b) The person has previously been convicted at least three times under this section or under equivalent laws of another jurisdiction and all of the assaults involved domestic violence, as defined in ORS 135.230 . . . ." *Id*. § 163.160(3). These two enhancements fall into the class of recidivist sentencing enhancements, like those in *Corona-Sanchez*. Were Moreno-Hernandez's Assault IV conviction enhanced by one of these factors, *Corona-Sanchez* would mandate our holding that his earlier offense was not a "felony."

There is, however, some language in *Corona-Sanchez* that is not expressly limited to recidivist factors. For example, the

en banc court stated in one passage that it was "[e]xamining the crime itself, rather than any sentencing enhancements," 291 F.3d at 1209, and added elsewhere that the Guidelines "describ[e] felonies with reference to the offense, rather than separate sentencing enhancements." *Id.*; *see also id.* at 1209-10 ("Given the profound consequences of the [aggravated felony] designation and the declared purpose of Congress to target 'serious crimes,' it is doubtful that Congress intended to include crimes such as petty theft within the ambit of the definition by virtue of state sentencing enhancements imposed for acts that themselves are not aggravated felonies."). What the *Corona-Sanchez* court meant by "enhancements" is thus not absolutely clear. *Cf. United States v. Buckland*, 289 F.3d 558, 565-67 (9th Cir. 2002) (en banc) (suggesting that, for constitutional purposes, *Apprendi* eschews formalistic distinctions between sentencing factors and elements of a crime).

## B.   *Pimentel-Flores*

The broader reading of *Corona-Sanchez*, to encompass all factors that increase a sentence, is to some degree supported by our decision one year later in *Pimentel-Flores*, the first case in this circuit to consider the current version of § 2L1.2. *Pimentel-Flores* first concluded that a "crime of violence" need not be an aggravated felony under § 2L1.2. It then considered whether Pimentel-Flores was subject to the 16-level enhancement based on a state-court conviction for "assault, in violation of [a] court order." *Pimentel-Flores*, 339 F.3d at 967. Because the government did not provide the district court with evidence of the statute of prior conviction, as *Corona-Sanchez* requires, we remanded for resentencing. *Id.* at 967-69.

*Pimentel-Flores* went on to discuss various issues that the district court was directed to consider on remand. For instance, the court held that *Taylor* "applies to the determination of whether a defendant's prior offense constitutes a 'crime of violence' for purposes of [§ 2L1.2]." *Id.* at 968.

More central to this case, the court also concluded that "there is a plausible prospect that the outcome might have been different had the government [provided the statute of conviction]," *id.*, because:

> We have held in the past that state sentencing enhancements raising misdemeanors to felonies cannot be considered in determining whether a prior conviction is an "aggravated felony." Instead, the court must examine the statute under which a defendant was convicted for his core offense. The same logic would apply to the determination of whether a defendant's prior offense was a "felony."

*Id.* at 969 (citing *Corona-Sanchez*, 291 F.3d at 1209-10).[5] This language in *Pimentel-Flores* might plausibly be read as indicating that *Corona-Sanchez* extends to all sentencing factors, not just those based on recidivism. Again, however, such an argument assumes that *Corona-Sanchez*, in referring to "all enhancements," understood that it was including all non-recidivist, offense-related factors within the ambit of "enhancements."

The violation of a court order — the enhancement at issue in *Pimentel-Flores* — is similar to a recidivist factor, for it is backward-looking. Further, rather than delineating the conduct that constituted the crime of conviction, the enhancement in *Pimentel-Flores* is concerned with a legal history characteristic that the offender already possessed before committing the offense in question — namely, being subject to a court order. It is thus unlikely that the less-than-clear language of

---

[5]The court subsequently noted that "[t]hese are not clear-cut conclusions but only plausible possibilities to be critically assessed on remand," *Pimentel-Flores*, 339 F.3d at 969. This statement seems to qualify only the paragraph in which it appears, discussing the statute proffered by Pimentel-Flores's counsel at oral argument, not the court's characterization of *Corona-Sanchez* one paragraph earlier, as quoted above.

*Pimentel-Flores*, summarizing *Corona-Sanchez*, was meant to go beyond the circumstances before the court in either of the two cases.[6]

**[4]** We are left, then, at something of a doctrinal impasse. *Corona-Sanchez* was not entirely clear as to whether it was enunciating a rule only for recidivist sentencing enhancements, although the basis for its holding turned largely on recidivism principles enunciated in *Almendarez-Torres* and *Apprendi*; *Pimentel-Flores* widened the potential confusion over *Corona-Sanchez*'s scope. In the abstract, then, whether *Corona-Sanchez* and *Pimentel-Flores* extend to this case may best be described as uncertain, with plausible arguments on both sides.

## C.    Non-Recidivist Enhancements

We are nevertheless persuaded that *Corona-Sanchez* and *Pimentel-Flores* go only so far, and no further. Otherwise, as the government argues here, "logic would prohibit use of any felony prior conviction if there was also a necessarily included misdemeanor version of the offense." Most felonies have *some* misdemeanor as an element, to which other elements are added. Thus, if we adopted the broader reading of our precedents, the line drawing, as the government suggests, would become an impossible exercise, turning on semantic fortuities of statutory numbering or drafting.

Consider, for example, Oregon's definition of assault in the first degree: "A person commits the crime of assault in the

---

[6]The government suggested that we are bound by the Oregon Court of Appeals' description of the presence of a minor child "as an element of the offense" of Assault IV. *See State v. Glaspey*, 55 P.3d 562, 565 (Or. Ct. App. 2002). The Oregon Supreme Court, however, has since overruled the Court of Appeals' decision in *Glaspey*. *See State v. Glaspey*, 100 P.3d 730 (Or. 2004). In any event, *Corona-Sanchez*, *Pimentel-Flores*, and *Taylor* all require us independently to assess the statutory scheme regardless of the state's characterization of the offense.

first degree if the person intentionally causes serious physical injury to another by means of a deadly or dangerous weapon." OR. REV. STAT. § 163.185(1). Under Moreno-Hernandez's logic, the facts that the assault was committed "intentionally," that the assault resulted in serious physical injury, and that the assault was "by means of a deadly or dangerous weapon" would each be sentencing factors separate from the underlying offense — assault — which Oregon law defines as a misdemeanor in a separate statutory section. *See id*. § 163.160(2). Taking the argument to its extreme, even homicide, which under Oregon law occurs when "without justification or excuse, [a] person intentionally, knowingly, recklessly or with criminal negligence causes the death of another human being," *id.* § 163.005(1), would be a misdemeanor, since the offense could also be characterized as an assault with a number of aggravating factors, only one of which is the death of the victim.

Moreno-Hernandez's alternative position — that we should look at the structure of the state statute — is equally unconvincing. Under this approach, if the *same* statutory section included an offense and a lesser-included version thereof — as does Oregon's Assault IV statute — then the lesser-included version would govern whether the offense defined a felony. By contrast, if another state codified simple assault without the presence of the victim's minor child in a separate "Assault V" statute, then, under Moreno-Hernandez's argument, the same offense would be a felony for federal sentencing purposes in that state, but not in Oregon. This dichotomy is untenable, and explains why we may not look to the state statutory labeling or structure in ascertaining whether the offense is a felony.

Put simply, Moreno-Hernandez's argument, that we should read *Corona-Sanchez* and *Pimentel-Flores* to reach *all* sentencing factors, would necessarily require us to hold that nearly all state-law offenses are misdemeanors for federal

sentencing purposes. We cannot agree with this reductio ad absurdum.

**[5]** Instead, we read *Corona-Sanchez* and *Pimentel-Flores* as applying only to sentencing enhancements *not* based directly on the facts of the offense of conviction.[7] When legislatures have chosen to demarcate sentences based on specific characteristics of the offense itself rather than on some aspect of the offender's legal history, we believe that the *Corona-Sanchez* "core offense" concept does not apply, and that the entire sentence, including its offense-based aggravating characteristics, must be factored into our determination of whether or not it is a "felony."

**[6]** Because we do not consider Moreno-Hernandez's Assault IV conviction separately from the aggravating factor, and because Assault IV in the presence of the victim's minor child carries a maximum sentence of five years' imprisonment, we conclude that the statutory maximum sentence for Moreno-Hernandez's offense of conviction under Oregon law is five years in prison.

### III.  *Blakely* and *Rios-Beltran*

At oral argument and in supplemental briefing ordered by the court, Moreno-Hernandez advanced an argument purportedly based on *Blakely v. Washington*, 124 S. Ct. 2531 (2004).[8]

---

[7]To clarify our holding, we mean to speak only to offenses that incorporate lesser offenses as part of their definition, such as the Oregon assault statute at issue here. Offenses that are *only* illegal because of the offender's status, such as possession of a firearm by a convicted felon, *see* 18 U.S.C. § 922(g)(1), are not implicated by our holding today, for, absent consideration of the offender's status, there is no "core offense" remaining.

[8]Moreno-Hernandez seems to raise two distinct challenges to his enhancement based, at the time, on *Blakely*. The government responded only to his first argument — that *Blakely* (and now *Booker*, 125 S. Ct. 738) prevents the district court from enhancing his sentence based on facts

Specifically, Moreno-Hernandez suggests that *Blakely*, as applied to *Oregon's* sentencing guidelines, limits the maximum possible sentence for his Oregon Assault IV conviction to the presumptive maximum sentence available under the Oregon guidelines at the time — thirty-six months of probation and a maximum of 180 days in jail. His contention is that the district court, in ascertaining the maximum possible state sentence to which Moreno-Hernandez was subject for his Assault IV conviction, should have looked not to the statutory maximum sentence for the offense, but to the maximum sentence available under the Oregon sentencing guidelines for Moreno-Hernandez, in particular. In effect, Moreno-Hernandez argues that because he could not have been sentenced for his Assault IV conviction to more than a maximum specified by the Oregon guidelines — which, he maintains, is less than one year — his conviction was not for a "felony."

Whether or not Moreno-Hernandez's argument would otherwise have merit in light of *United States v. Rios-Beltran*, 361 F.3d 1204, 1209 n.4 (9th Cir. 2004), we are unpersuaded that *Blakely* could have altered the maximum possible sentence *at the time* of his 1999 Oregon state conviction. For purposes of ascertaining whether a predicate offense constitutes a "felony" for federal sentencing purposes, we are concerned only with the maximum possible sentence at *that* time.

---

not found by the jury. We agree with the government that this contention is without merit. The district court relied only on the "fact of prior conviction" in enhancing Moreno-Hernandez's sentence. *Booker* bars the district court from considering only those facts not found by the jury *other than* the fact of prior conviction. *See, e.g.*, *id.* at 756 (Stevens, J.) ("Any fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." (emphasis added)). The fact of Moreno-Hernandez's Assault IV conviction thus does not raise any Sixth Amendment problems. *See United States v. Quintana-Quintana*, 383 F.3d 1052, 1053 (9th Cir. 2004) (per curiam).

In *Rios-Beltran* — which was decided before *Blakely* — we held that "what matters for federal sentencing purposes is that the statutory maximum sentence for the offense for which [the defendant] was convicted exceeded one year." *Id.* at 1209. Because the statutory maximum for Rios-Beltran's prior conviction was greater than one year, and because "Oregon [had] not ruled out the possibility" that Rios-Beltran's actual sentence could lawfully exceed one year, we did not decide what effect it would have for purposes of section 2L1.2 if Oregon had ruled out that possibility. *Id.* at 1209 n.4. Likewise, at the time of Moreno-Hernandez's prior conviction, the statutory maximum for his offense was greater than one year, and Oregon law did not necessarily preclude the imposition of an actual sentence of more than one year.

Oregon law has changed in light of *Blakely*, so that any sentence in excess of the presumptive range in the state guidelines is now recognized as unconstitutional unless based on facts found by a jury or a prior conviction. *State v. Dilts*, 103 P.3d 95 (Or. 2004). That ruling was not in effect, however, at the time of Moreno-Hernandez's Oregon conviction.

Moreno-Hernandez's argument thus is tantamount to a collateral attack on his original conviction. We cannot consider such an attack as part of his challenge to a subsequent sentencing enhancement. *See, e.g.*, *United States v. Marks*, 379 F.3d 1114, 1119 & n.4 (9th Cir. 2004) (citing *Custis v. United States*, 511 U.S. 485, 496 (1994)), *cert. denied*, 125 S. Ct. 1355 (2005); *United States v. Martinez-Martinez*, 295 F.3d 1041, 1044-45 (9th Cir. 2002). We therefore reject Moreno-Hernandez's *Blakely*-based challenge to the district court's determination that his Oregon state conviction was a "felony." We express no opinion on how section 2L1.2 would apply in a case where the statutory maximum for a prior conviction was greater than one year, but the maximum actual sentence that could lawfully be imposed *at the time of the conviction* was less than one year.

### *Conclusion; Impact of* Ameline

As discussed above, we include the presence of the victim's minor child in ascertaining the statutory maximum sentence, so the statutory maximum for the Oregon Assault IV offense (including the presence of the victim's minor child) was imprisonment for no more than five years. Because the Guidelines define as a felony any offense punishable by a term of imprisonment exceeding one year, Moreno-Hernandez's underlying state-law conviction was, in this respect, for a "felony that is . . . a crime of violence."

**[7]** We must, however, consider what effect the recent decision in *United States v. Ameline*, No. 02-30326, 2005 WL 1291977 (9th Cir. June 1, 2005) (en banc) has on this appeal. There, our en banc court held that "when we are faced with an unpreserved *Booker* error that may have affected a defendant's substantial rights, and the record is insufficiently clear to conduct a complete plain error analysis, a limited remand to the district court is appropriate for the purpose of ascertaining whether the sentence imposed would have been materially different had the district court known that the sentencing guidelines were advisory." *Id.* at *1. However, in *Ameline*, the defendant had asserted the Sixth Amendment objection that his "sentence was enhanced by judge-found facts under a mandatory Guidelines system," and neither party had raised the "nonconstitutional error that a sentence was erroneously imposed under guidelines believed to be mandatory." *Id.* at *11 & n.8. Here, by contrast, the district court committed no Sixth Amendment error. *See supra* note 8. Thus, the question we must decide is whether to follow *Ameline*'s "limited remand" approach where the only error involved is of the nonconstitutional variety.

**[8]** We conclude that a limited remand is proper in *all* pending direct criminal appeals involving unpreserved *Booker* error, whether constitutional or nonconstitutional. Nothing in the *Ameline* opinion indicates that the en banc court intended

to utilize that approach only in cases of Sixth Amendment error. Nor do we perceive any reason why *Ameline* should be so limited. After all, the reason for a limited remand is that it sometimes is not possible for us to answer the question whether the district court would have imposed the same sentence if it had known the guidelines were advisory, and the fact that the district court has not conducted any factfinding does not make this question any easier (or harder) for us to answer. We will therefore remand Moreno-Hernandez's sentence in accordance with *Ameline*.

**REMANDED.**